**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

CASE NO. _____

RODNEY DEBAUN, individually and as
Trustee of the LISA ISIBELLE DEBAUN FAMILY TRUST,

     Plaintiffs,

vs.

SOUTHWEST FLORIDA AVIATION, INC.

     Defendant.

_____/

## COMPLAINT

Plaintiffs, RODNEY DEBAUN, individually and as Trustee of the RODNEY WILLIAM AND LISA ISIBELLE DEBAUN FAMILY TRUST (collectively, "Plaintiff"), sue Defendant, Southwest Florida Aviation, Inc., and allege as follows:

### PARTIES

1. Plaintiff Rodney Debaun is a resident of Ellis County, Texas, and is *sui juris*. Rodney William is the Trustee of the Rodney William and Lisa Isibelle DeBaun Family Trust.

2. Plaintiff Rodney William and Lisa Isibelle DeBaun Family Trust is a trust organized under the laws of the State of Texas, with its principal place of business located in Ellis County, Texas, and is *sui juris*.

3. Defendant Southwest Florida Aviation, Inc. is a corporation formed under the laws of Delaware with a principal place of business in Florida ("Defendant").

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest

Page 1 of 15

and costs, and is between citizens of different states. Plaintiffs are citizens of Texas. Defendant is a citizen of Florida.

5.     This Court has personal jurisdiction over the Defendant because Defendant maintains its principal place of business in DeSoto County, Florida.

6.     Venue is proper in this Court pursuant to 28 U.S.C.§ 1391(b)(1) and (2). Defendant is located in Florida and maintains its principal place of business in Arcadia, Florida, and because a substantial part of the events or omissions giving rise to the claims occurred in Florida.

7.     Plaintiff has retained and is obligated to pay their attorneys a reasonable attorneys' fee for their services herein.

8.     All conditions precedent to the commencement of this action have been performed, occurred, or been waived.

## STATEMENT OF FACTS

6.     Rodney DeBaun, individually and as Trustee of the Rodney William and Lisa Isibelle DeBaun Family Trust, is a business owner, pilot, and organ transplant survivor. He and his wife, Isibelle, operate a nonprofit foundation, the David Nicklas Organ Donor Awareness Foundation (the "Foundation"), which provides housing for transplant patients and their families and offers scholarships. The Foundation is named for David Nicklas, a student and pilot at the United States Air Force Academy who was killed; David was an organ donor, and Rodney received his heart. The Foundation owns several wartime-era aircraft bearing the Foundation's logo and flies them to airshows across the United States to promote organ-donor awareness. To support that mission, Rodney decided to purchase a helicopter for use at airshows, which typically begin in the Spring.

7.      Defendant sells helicopters, helicopter maintenance, and helicopter overhaul services. Defendant is particularly known for its ability to quickly convert and upgrade, for civilian use, Bell helicopters previously used by the United States military.

8.      Through its the Company Profile on its website, Defendant states it "has earned a highly respected reputation in the industry for our knowledge, expertise, and exceptionally fast turnaround of Bell and SW Series models, providing quality helicopter maintenance, excellent customer service, and minimizing the amount of downtime for our customers. We are successful at helping our customers get off the ground and flying as soon as possible".

9.      Defendant's website further advertises that it is fully capable of doing repairs and services in house and keeps a large parts inventory enabling it to quickly deliver helicopters to its customers. Specifically, Defendant's website provides:

   a. "Capitalizing on a highly-skilled & experienced workforce, Southwest Florida Aviation, Inc. ensures quality product & unparalleled service in specialties including structural & component repair services on our product line and Bell product lines, a fully-portable and full-service product support."

   b. "Since its inception, Southwest Florida Aviation, Inc. is authorized to refurbish and equip UH-1 series helicopters as well as the remanufacture of the Bell series 204, 205, 212, and 412 Series and their components. Our technical staff has a full range of experience and expertise in these series; they can identify and resolve problems quickly. Our customers benefit from faster turnaround time and lower operating costs."

   c. "Our facility is dedicated exclusively to providing our customers with the finest service available. In addition, Southwest Florida Aviation, Inc. stocks a full inventory of genuine spare parts and equipment to ensure complete customer support. This extensive spare parts inventory includes engines, transmissions, blades, nuts, bolts, gaskets, and the innumerable items that are required to keep helicopters flying."

10.    On October 23, 2025, Plaintiff and Defendant executed and entered into the Sales Agreement for Plaintiff to purchase a Huey helicopter bearing serial number 11445[1] ("Helicopter") for $760,000. *See* **Exhibit 1.**

11.    The purchase price would be split into a deposit of $380,000, a progressive payment of $304,000 payable 30 days after the deposit, and a final payment of $76,000 upon completion of the Helicopter.

12.    Pursuant to the terms of the Sales Agreement, Defendant was to complete the Helicopter within 60-90 days after Defendant received Plaintiff's deposit with lead time contingent on parts availability beyond Defendant's control from OEM or other repair facilities.

13.    Pursuant to the terms of the Sales Agreement, the Helicopter was to include a particular avionics package and a "new or modified instrument panel".

14.    Pursuant to the terms of the Sales Agreement, the Helicopter was to be configured and equipped as described in SW205 (UH-1H) Aircraft Sales Bulletin Attachment 1 attached to the Sales Agreement.

15.    Similar to the Sales Agreement, the Sales Bulletin attached to the Sales Agreement listed the major components, equipment, and avionics that would be included on the Helicopter. Additionally, it stated the Helicopter would be completed and available to Plaintiff in 45-90 days from the date Plaintiff paid the deposit.

16.    Plaintiff paid the $380,000 deposit on November 5, 2025.

17.    On January 22, 2026, Plaintiff paid the $304,000 progressive payment.

---

[1] Helicopter serial number 11445 subsequently had a title issue and was switched out for the same model bearing serial number 64-13667. The parties executed an Amendment to the Sales Agreement. *See* **Exhibit 2**.

18.    As of the filing of this action, Defendant still has not complied with the Sales Agreement and completed the Helicopter. As Defendant knows, the airshow season has already begun.

19.    Despite receiving Plaintiff's payments listed above, and specifically advertising a complete parts inventory, Defendant had to order the main rotor blades from an outside vendor.

20.    Defendant did not even order the blades until January 2026, over sixty (60) days after receiving Plaintiff's deposit.

21.    According to the terms of the Sales Agreement, the Helicopter should have been completed during this timeframe, yet Defendant had just placed the order for the blades.

22.    Per its website, Defendant should have had the blades and other parts in its "a full inventory of genuine spare parts and equipment."

23.    Defendant also sent out the Helicopter's tail boom to an outside repair station. It is unclear why Defendant did not or could not complete the Helicopter's tail boom.

24.    As of today, Plaintiff has received no definitive update on the expected date of completion for the parts or the Helicopter itself.

25.    Knowing they would need to order the rotor blades from an outside vendor, Defendant delayed ordering the blades despite having Plaintiff's deposit payment and progressive payment. The same goes for the tail boom repairs.

26.    Additionally, Plaintiff has learned that Defendant no longer does avionics in house. Instead, Defendant now sends the Helicopter to an outside avionics shop. Typically, when avionics are done in house, the avionics can be installed while the Helicopter is undergoing other repairs so there is no delay in completing the aircraft. However, in this situation, because Defendant no longer does the avionics while it has the Helicopter in its repair facility, the Helicopter will have to be

completely repaired and assembled before it can then be flown to an avionics shop where it will spend an additional 30-90 days for Plaintiff's particular avionics package to be installed and tested. Six months have now lapsed and Plaintiff cannot get a definitive answer from Defendant as to when the rotor blades and tail boom will be completed, much less when the Helicopter will be reassembled so it can be sent to the avionics shop.

27.     At the end of the day, Plaintiff could be looking at 9-10 months for completion of the agreed upon work for the Helicopter, which Defendant promised, per the Sales Agreement, would take 60-90 or 45-90 days in accordance with the Sales Bulletin.

28.     Both Defendant's advertising and its representations in its Sales Agreement and Sales Bulletin are misleading. Defendant represented that the Helicopter would be ready in 45-90 days yet failed to order the necessary parts from outside vendors for at least 60 days after Plaintiff paid his deposit and failed to notify Plaintiff that the Helicopter would need to be flown to separate avionics shop — adding an additional 30-90 days to the timeline. There is no realistic scenario in which Defendant can deliver any helicopter to its customers in 45-90 days despite its definitive and repeated representation to the contrary.

29.     In addition to Defendant's misrepresentations, Defendant has refused to install a new or modified instrument panel in the Helicopter as required by the Sales Agreement, instead insisting the Helicopter will come with a standard instrument panel.

30.     Defendant has also told Plaintiff it will not comply with the express terms of the Sales Agreement and intends to install used avionics in the Helicopter. Not only are used avionics not provided for in the Sales Agreement or the Sales Bulletin, installing used avionics will likely further delay the Helicopter's completion. Notably, the avionics set forth in the Sales Bulletin are readily available as new. There is no reason for Defendant to install used avionics.

31.     The airshow season has already begun, for which timely delivery was essential to Plaintiff and the Foundation's charitable mission.

32.     The parties' Sales Agreement and Sales Bulletin required Defendant to deliver the Helicopter to Plaintiff in a timely manner and within the timeframe provided.

33.     The parties' Sales Agreement required Defendant to deliver the Helicopter with specific parts, equipment, and avionics.

34.     Defendant has failed to deliver the Helicopter to Plaintiff in a timely manner.

35.     Defendant has failed to deliver the Helicopter with proper parts, equipment, and avionics.

36.     Defendant made representations to Plaintiff regarding the Helicopter's readiness, parts, equipment, and avionics.

37.     These representations regarding the Helicopter's readiness, parts and equipment to be installed, the work to be performed, and the avionics were and remain false.

38.     Plaintiff relied on Defendant's representations regarding the Helicopter's readiness, the specific parts, and equipment to be installed, the scope work to be performed, and avionics in deciding to purchase the Helicopter.

39.     As a result of Defendant's multiple misrepresentations and its failure to timely deliver the Helicopter, with the agreed-upon parts, equipment, and avionics, Plaintiff has suffered and continues to suffer damages. the Helicopter

## COUNT I - BREACH OF CONTRACT

40.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

41.    The Sales Agreement is a valid contract existed between Plaintiff and Defendant to purchase the Helicopter.

42.    Plaintiff performed its obligations under the Sales Agreement by paying the deposit payment and progressive payments totaling $684,000.00.

43.    Defendant materially breached the Sales Agreement by failing to deliver the Helicopter in a timely manner through fault of its own by, among other things, failing to keep parts in inventory, failing to timely order parts it did not have in inventory, and by failing to facilitate the avionics installation in a manner that would allow the Helicopter to be completed in the represented delivery window provided to Plaintiff

44.    Defendant is in material breach of the Sales Agreement for its failure to install the proper avionics panel and installing used avionics in the Helicopter.

45.    Plaintiff has suffered damages as a result of Defendant's breach.

46.    As a result of Defendant's failure to deliver the Helicopter timely, Plaintiff has incurred costs and losses. Plaintiff is without the $684,000 provided to Defendant in accordance with the Sales Agreement, but now with no indication of when the Helicopter will be completed, if ever.

## COUNT II - FRAUDULENT MISREPRESENTATION

30.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

31.    Defendant made false statements of material fact to Plaintiff pursuant to statements set forth in the Sales Agreement, Sales Brochure, and on Defendant's website.

32.    Defendant made representations to Plaintiff regarding the Helicopter's readiness, parts, equipment, and avionics.

33.     The representations made by Defendant regarding the Helicopter's readiness, parts, equipment, and avionics were false.

34.     Defendant knew or should have known that it could not reasonably deliver the Helicopter within the represented 45-90 days, particularly as it waited 60 days to order necessary parts from outside vendors and that the Helicopter would have to be moved to a third-party avionics shop — adding a significant amount of time until completion, if ever.

35.     Defendant knew the statements were false or made the statements with reckless disregard for the truth.

36.     Defendant knew or should have known that the representations regarding the Helicopter's readiness, parts, equipment, and avionics were false at the time they were made.

37.     Defendant knowingly made these representations with the intent to induce Plaintiff to rely upon them.

38.     Defendant made the representations regarding the Helicopter's readiness, parts, equipment, the parts and equipment to be installed, the work to be performed, and the avionics for the purpose of inducing Plaintiff to purchase the Helicopter and enter into the Sales Agreement.

39.     Plaintiff reasonably relied on the false statements.

40.     Plaintiff relied on Defendant's representations regarding the Helicopter's readiness, parts, equipment, the parts and equipment to be installed, the work to be performed, and the avionics in deciding to purchase the Helicopter and entering into the Sales Agreement.

41.     Plaintiff's reliance on Defendant's representations was reasonable under the circumstances given Defendant's expertise in helicopter conversions, decades in the marketplace, and industry standards.

42.     Plaintiff suffered damages as a result of relying on Defendant's false statements.

43.    As a result of relying on Defendant's false representations, Plaintiff purchased a helicopter that has not been completed with the agreed-upon parts, equipment, and avionics as represented and required by the Sales Agreement.

44.    Plaintiff has incurred the amount paid for the Helicopter to date, inclusive of the entirety of the deposit and progressive payments, with no completion date or delivery date in sight.

45.    Plaintiff is no longer confident that Defendant is even capable of delivering the Helicopter at this point given the significant delay and lack of transparency on the readiness of outside parts and avionics.

46.    In addition to the costs incurred and losses, Plaintiff will be unable to use the Helicopter in airshows this season for the Foundation.

## COUNT III - FRAUDULENT INDUCEMENT

47.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

48.    Defendant made misrepresentations of material fact to Plaintiff through its website advertising, the Sales Agreement, and the SW205 (UH-1H) Aircraft Sales Bulletin incorporated therein, regarding: (a) the Helicopter's readiness and delivery timeframe, specifically that the Helicopter would be completed and delivered within 45-90 days and/or 60-90 days after deposit; (b) Defendant's ability to perform repairs and services in-house and its maintenance of a large parts inventory sufficient to enable quick delivery, and (c) the Helicopter's specified equipment, including the avionics package and a new or modified instrument panel.

49.    Defendant knew or should have known that these representations were false or misleading when made, because Defendant failed to timely order necessary parts following receipt

of Plaintiff's deposit and dispatched avionics work to outside repair facilities, thereby adding an additional 30-90 days to the completion timeline as represented.

50.    Defendant intended that Plaintiff rely on these misrepresentations and omissions to induce Plaintiff to enter into the Sales Agreement and pay Defendant substantial sums toward the purchase price.

51.    Plaintiff justifiably relied on Defendant's misrepresentations and omissions in deciding to purchase the Helicopter and has paid Defendant $684,000 to date.

52.    Plaintiff suffered damages as a result of that reliance, Plaintiff has suffered damages, including the loss of the use of $684,000 with no definitive completion or delivery date, and the loss of the use of the Helicopter during one or more airshow seasons.

**COUNT IV – UNFAIR OR DECEPTIVE TRADE PRACTICES**

53.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

54.    Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, including by: (a) advertising and representing exceptionally fast turnaround times and substantial in-house repair capability and parts inventory enabling timely delivery; (b) representing the Helicopter would be completed within 90 days of the deposit; and (c) representing the Helicopter would include specified equipment, including a new or modified instrument panel and a specified avionics package; (d) failing to timely order necessary parts following receipt of Plaintiff's deposit; (e) outsourcing major work including rotor blades, tail boom, and avionics in a manner that added substantial time to the completion time; (f) refusing to install the promised instrument panel, and (g) indicating its intent to install used avionics not provided for in the Sales Agreement or Sales Bulletin.

55.    Defendant's deceptive acts and practices were a direct and proximate cause of Plaintiff's losses and actual damages, including Plaintiff's payment of $684,000 to date without delivery or a definitive completion date, and the loss of the Helicopter during one or more airshow seasons.

56.    Plaintiff is entitled to recover actual damages, and to seek attorney's fees and court costs as provided by FDUTPA.

<strong>COUNT V – EQUITABLE LIEN</strong>

57.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

58.    Plaintiff sues Defendant seeking the imposition of an equitable lien on the Helicopter. An equitable lien is necessary to remedy the Sales Agreement (including the SW205 (UH-1H) Aircraft Sales Bulletin Attachment 1) and the aforementioned Amendment.

59.    It would be inequitable for Defendant to retain the benefit of the Helicopter, including improvements paid by Plaintiff, without paying the value thereof to Plaintiff.

60.    Defendant had knowledge of the benefit of Plaintiff's funds in the improvement of the Helicopter including, without limitation, the readiness, parts, equipment, the parts and equipment to be installed, the work to be performed, and the avionics, all of which are traceable to Plaintiff.

61.    Courts have imposed an equitable lien in similar situations.

62.    But for Plaintiff's efforts, Defendant would not own and control the Helicopter and improvements thereupon including, without limitation, the readiness, parts, equipment, the parts and equipment to be installed, the work to be performed, and the avionics, all of which are traceable to Plaintiff.

63.     The Helicopter, including improvements, are directly traceable to Plaintiff's funds and efforts.

64.     It would be unjust to allow Defendant to retain the benefit of the Helicopter.

## COUNT VI – CONSTRUCTIVE TRUST

65.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

66.     This is a claim seeking imposition of constructive trust over the Helicopter because such property was acquired by and improved by Defendant due to the funds that are directly traceable to Plaintiff.

67.     Courts have imposed a constructive trust in similar situations.

68.     But for Plaintiff's efforts and funds, the ownership, control, and/or improvement by Defendant of the Helicopter would not have occurred.

69.     But for Plaintiff's efforts, Defendant would not own and control the Helicopter and improvements thereupon including, without limitation, the readiness, parts, equipment, the parts and equipment to be installed, the work to be performed, and the avionics, all of which are traceable to Plaintiff.

70.     It would be unjust to allow Defendant to retain the benefit of the Helicopter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant as follows:

A. Specific performance against Defendant requiring Defendant to immediately return Plaintiff's $684,000 in exchange for cancellation of the Sales Agreement.

B. Alternatively, specific performance against Defendant requiring Defendant to deliver the Helicopter as specified in the Sales Agreement (and the aforementioned Amendment), including the proper avionics package, new or modified instrument

Page 13 of 15

panel, and all components configured per the SW205 (UH-1H) Aircraft Sales Bulletin, within a reasonable time period to be determined by the Court.

C. An order enjoining Defendant from selling the Helicopter to any third party during the pendency of this litigation.

D. An order enjoining Defendant from making any modifications to the Helicopter that are not in accordance with the Sales Agreement and Sales Bulletin or installing used or non-conforming avionics or components during the pendency of this litigation.

E. In the alternative, if specific performance is not granted or is not feasible, damages against Defendant in an amount to be determined at trial, including but not limited to the difference between the value of the Helicopter as represented and the value as delivered or not delivered, lost use of the Helicopter for the Foundation's charitable mission during the airshow season, costs and expenses incurred, and interest on the $684,000 paid to Defendant.

F. In the alternative, if specific performance is not feasible, restitution of all payments made by Plaintiff to Defendant in the amount of $684,000.

G. Damages against Defendant for all counts of the Complaint including without limitation the fraudulent misrepresentation, in an amount to be determined at trial.

H. Imposing and impress an equitable lien of superior dignity to that of the above Defendant and foreclose that lien for the full amount due to Plaintiff, plus interest, costs, and attorney's fees;

I. Alternately decree that Plaintiff has a valid and subsisting lien and trust on the proceeds of any funds which remain from the sale of the Helicopter;

J. That the Defendant and all persons claiming under or against Defendant shall be foreclosed of all interest in the Helicopter;

K. To impose and impress a constructive trust on the Helicopter superior dignity to that of Defendant;

L. Pre-judgment interest against Defendant as provided by law.

M. Post-judgment interest against Defendant as provided by law.

N. Attorneys' fees and costs against Defendant as provided by contract or statute.

O. Retain jurisdiction to award a deficiency judgment, if any;

P. Such other relief as the Court deems just and proper.

Dated: May 18, 2026

Respectfully Submitted,

BARRY S. TURNER, P.A.
PO Box 330189
Miami, Florida 33233
Telephone: (305) 699-4392
Fax: (786) 233- 7068
Email: bt@bstpa.com

By:＿＿/s/ *Barry S. Turner*
Barry S. Turner, Esq.
Fla. Bar No. 85535

-and-

RAMES LAW FIRM, P.C.
Lindsey M. Rames, Esq.
Texas Bar No. 24072295
3710 Rawlins Street, Suite 1420
Dallas, TX 75219
Telephone:  (214) 884-8860
Fax: (888) 482-8894
Email: lindsey@rameslawfirm.com
*Pro Hac Vice Forthcoming*

*Counsels for Plaintiff*